UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SERENA B.,

                   Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:23-CV-06423 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Serena B. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is denied and the Commissioner's motion (Dkt. 10) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on October 20, 2020. (Dkt. 6 at 23, 209-15).[1]  In her application, Plaintiff alleged disability beginning January 1, 2014. (*Id.* at 23, 209).  Plaintiff's application was initially denied on April 19, 2021, and on reconsideration on November 2, 2021. (*Id.* at 23, 85, 115-21).  At Plaintiff's request, an online video hearing was held before administrative law judge ("ALJ") Mark Solomon on August 31, 2022. (*Id.* at 23, 50-73).  On September 26, 2022, the ALJ issued an unfavorable decision. (*Id.* at 23-44).  Plaintiff requested Appeals Council review; her request was denied on June 7, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 20, 2020, the application date.  (Dkt. 6 at 25).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "cervical degenerative disc disease (DDD), lumbar degenerative disc disease (DDD) and

facet arthropathy, right shoulder degenerative joint disease (DJD), fibromyalgia, bipolar disorder, major depression disorder (MDD), and generalized anxiety disorder (GAD)." (*Id.* at 26). The ALJ further found that Plaintiff's left cubital tunnel syndrome, left carpal tunnel syndrome, asthma, and obesity were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 27). The ALJ particularly considered the criteria of Listings 1.15, 12.04, 12.06, and 14.09 in reaching his conclusion. (*Id.* at 25-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Plaintiff] can sit six hours, stand and walk a total of six hours, lift and or carry 20 pounds occasionally and ten pounds frequently. [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch, crawl, and avoid concentrated exposure to respiratory irritants. Additionally, [Plaintiff] can remember, understand, carry out simple instructions, can use judgment to make simple work related decisions, adapt to routine and occasional changes in work place, and can have routine interactions with supervisors and coworkers, and with the general public.

(*Id.* at 31). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 43).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk, office helper, and marker. (*Id.* at 43-44). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 44).

II.   **The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision, arguing that: (1) the ALJ failed to properly evaluate the medical opinion evidence in the record; and (2) relied on his own lay opinion in determining Plaintiff's physical RFC.  The Court is not persuaded by these arguments, for the reasons discussed below.

A.   **Evaluation of Medical Opinions**

Plaintiff argues that the ALJ failed to evaluate the medical opinions of record in accordance with the regulations.  (Dkt. 9-1 at 15-20).  Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."   20 C.F.R. § 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id*. at § 416.920c(a).  With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 416.920c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Plaintiff makes two arguments relating to the ALJ assessment of the medical opinion evidence:  first, that the ALJ failed to acknowledge the consistency between the opinions of state agency consultative examiner Harbinder Toor, M.D., and Registered

Physician Assistant ("RPA") Catherine Goetz; and second, that he improperly relied on a lack of objective findings in the context of assessing her fibromyalgia impairment. The Court will address each argument separately.

### 1. Consistency of the Opinions of Dr. Toor and RPA Goetz

Dr. Toor performed an examination of Plaintiff on April 12, 2021. At the examination, Plaintiff reported having constant pain, which was sometimes sharp, rating as an 8/10 in her neck, lower back, and hips. (Dkt. 6 at 532). She reported that she cooks, cleans, and does laundry and grocery shopping with assistance. (*Id.* at 533). Dr. Toor observed that Plaintiff was not in acute distress but had an abnormal gait with a slight limp towards the right side. (*Id.* at 534). She was able to rise from a chair without difficulty but had trouble getting on and off the examination table. (*Id.*). Dr. Toor noted that Plaintiff had more tenderness, pain, and stiffness on the right side of her neck than the left. (*Id.*). Plaintiff's straight leg raising, both sitting and supine, were declined. (*Id.*). He found that Plaintiff's hip movements were declined bilaterally but she showed no evidence subluxations, contractures, ankylosis, or thickening and her joints were stable and nontender. (*Id.*). Dr. Toor assessed Plaintiff to have abnormal decreased sensation to touch in the lower part of the arms and hands and the lower part of the legs and hands. (*Id.*).

Dr. Toor opined that Plaintiff has moderate to marked limitations in reaching, pushing, pulling, and lifting, and moderate to marked limitations in twisting with the cervical spine. (*Id.* at 535). He indicated that she has mild to moderate limitations with fine motor activities with the hands, and moderate limitations in standing, walking, sitting, or bending, and difficulty with balance. (*Id.*). He concluded that she should avoid irritants

or other factors which can precipitate asthma and noted that pain can interfere with her routine.  (*Id.*).

The ALJ found Dr. Toor's opinion to be unpersuasive, explaining that:

I find that Dr. Toor's opinion is unpersuasive as inconsistent with the contemporaneous treatment notes.  Records show no abnormal gait; no limits in dexterity, no problems in arising from seated position, no limits in shoulder range of motion; and no decreased grip strength.  In any event, any limits noted by Dr. Toor did not last at least 12 consecutive months from the protective filing date, (PFD), based upon the treatment records.  I find that the functional limitations as quantified by the state DDS medical consultants more accurately reflect the claimant's limitations as supported by the treatment notes (Exhibit 1A at 6, 10, 11, 12; 4A at 13, 14, 15, 16, 17).

(*Id.* at 40).

RPA Goetz, Plaintiff's treating provider, submitted two statements.  On June 25, 2021, RPA Goetz submitted a letter identifying her treatment of Plaintiff's diagnoses of cervical disc disorder with radiculopathy, cervicalgia, chronic pain, fibromyalgia, neuropathy of both upper extremities, and lumbago.  (*Id.* at 592).  On July 14, 2022, RPA Goetz prepared a medical source statement.  (*Id.* at 834).  In it, she stated that Plaintiff had been a patient since October of 2013 and that her issues are chronic in nature with daily pain.  (*Id.*).  RPA Goetz noted that Plaintiff sees a neurologist, orthopedist, and physical medicine doctor, but her pain remains unchanged.  (*Id.*).  RPA Goetz concluded that Plaintiff is incapable of performing low stress jobs and her pain or other symptoms would constantly interfere with the attention and concentration needed for simple work tasks.  (*Id.* at 835).  She opined that Plaintiff could sit or stand for 10 minutes at a time and could sit, stand, or walk for less than 2 hours in an 8-hour workday.  (*Id.* at 835-36).  She would need unscheduled breaks at least once per hour and could frequently lift and carry up to 10

pounds.  (*Id.* at 836).  RPA Goetz indicated that Plaintiff is likely to be absent from work at least 4 days per month as a result of her impairments or treatment.  (*Id*. at 837).

The ALJ similarly found RPA Goetz's opinions to be unpersuasive, stating:

> Ms. Goetz' opinions are unpersuasive as they are not consistent with nor supported by her exams throughout, which were generally superficial (Exhibits 7F at 10, 12, 14; 15F at 7, 8).  Further, on June 25, 2021, Ms. Goetz did not note any exam of shoulder, nor did prior exam, and there was no indication of any limits in strength or range of motion (Exhibit 7F at 17).  Additionally, Ms. Goetz' opinion is not supported by the minimal positive findings and other than general findings of tenderness to palpation of distal right shoulder blade and one exam showing some tenderness to palpation of hips, the exams were unremarkable (Exhibits 7F at 17; 15F at 7).  Further, contemporaneous records from University of Rochester Medical Health showed substantially greater detailed exams, with minimal findings, primarily neck tenderness.  I further note that the term low stress is vague, and it appears that opinion is based primarily on [Plaintiff's] subjective complaints, which are not supported by the objective findings on examinations.

(*Id.* at 42).

Plaintiff argues that the ALJ's decision failed to acknowledge the common thread between these opinions and others in the record that identify limitations caused by Plaintiff's pain and reflect Plaintiff's inability to sustain regular attendance at work.

As an initial matter, the opinions are not fully consistent with each other.  Dr. Toor opined that "pain can interfere with [Plaintiff's] routine," whereas RPA Goetz opined that Plaintiff would be absent from work for four or more days per month and was incapable of maintaining the attention required for even low stress jobs due to constant pain.  But even assuming the opinions were consistent, the ALJ did not disregard Plaintiff's complaints of pain or consider the opinions of Dr. Toor and RPA Goetz in a vacuum.  Instead, the decision reflected his consideration of Plaintiff's pain complaints and the medical opinions in the

context of the entire record, specifically citing to contemporaneous treatment notes contained within the administrative record that were inconsistent with the opinions. Moreover, the ALJ was not required to specifically assess the consistency between these two particular opinions as long as he considered their consistency with the record as a whole, which he did here. *See Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) ("To the extent Rodriguez faults the ALJ for failing to explicitly discuss the consistency of each medical opinion with specific other opinions, '[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)); *Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why – or why not – he found each opinion to be 'supported' by the record and 'consistent' with the other evidence."); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim.").

Thus, when read as a whole, the ALJ's decision provides support for the conclusion that the opinions of Dr. Toor and RPA Goetz were not wholly consistent with the record. *See Seth M. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-01116 (JJM), 2024 WL 1130381, at *5 (W.D.N.Y. Mar. 15, 2024) ("Although ALJ Ba-Yunus's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation 'to construct an

accurate and logical bridge between his recitation of the facts and the conclusions he reached.'" (quoting *Lopez obo Y.T. v. Commissioner of Social Security*, 2020 WL 4504987, at *2 (W.D.N.Y. 2020)).  Plaintiff's argument amounts to no more than a disagreement with the ALJ's weighing of the medical evidence in connection with his assessment of these opinions.  But it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record.  *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence.  In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (quotation omitted)); *see also Joanna O. v. Comm'r of Soc. Sec.*, No. 1:21-CV-130-DB, 2024 WL 580348, at *11 (W.D.N.Y. Feb. 13, 2024) ("When subjective allegations are at issue (as opposed to objective evidence), the discretion and role of the adjudicator as the factfinder becomes even more important to resolve the conflict.").

## 2.  Objective Evidence Relating to Fibromyalgia

Plaintiff also contends that it was error for the ALJ to rely on a lack of objective findings to reject the opinions of Dr. Toor and RPA Goetz in light of Plaintiff's fibromyalgia diagnosis.

To be sure, "[t]he Second Circuit has recognized that 'fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the

disease.'" *Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-5 (JGLC) (BCM), 2024 WL 992197, at *14 (S.D.N.Y. Feb. 20, 2024) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotations omitted)), *report and recommendation adopted*, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024).   Accordingly, while a fibromyalgia diagnosis will not alone direct a finding of disability, "the ALJ is not entitled to rely solely on objective evidence--or lack thereof--related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record." *Lara M. v. Comm'r of Soc. Sec.*, No. 522CV01407(AMN/ML), 2023 WL 10365082, at *10 (N.D.N.Y. Dec. 20, 2023) (quoting *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020), *report and recommendation adopted*, 2024 WL 862196 (N.D.N.Y. Feb. 29, 2024).

At the same time, this does not preclude the ALJ from considering a lack of objective evidence in connection with his assessment of a claimant's fibromyalgia.  *See Amanda T. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00817 (JGW), 2024 WL 1257408, at *5 (W.D.N.Y. Mar. 25, 2024) ("Contrary to plaintiff's argument that fibromyalgia is based on subjective reports, Social Security Ruling (SSR) 12-2p requires that a claimant demonstrate objective evidence of specific clinical findings associated with fibromyalgia under established medical guidelines. . . . This ruling specifically directs the ALJ to consider all relevant evidence in the longitudinal record, including objective evidence, opinion evidence, statements about symptoms, course of treatment, and daily activities." (citation omitted)); *Joanna O.*, 2024 WL 580348, at *9 ("Thus, even if a claimant had a diagnosis

of fibromyalgia, objective findings such as normal strength, sensation, and range of motion could still indicate that the condition was not totally disabling.").

Here, the ALJ concluded that Plaintiff's fibromyalgia was a severe impairment, though he noted that "her fibromyalgia is not well documented, as only tender points are primarily for the neck." (Dkt. 6 at 41).  He also considered Plaintiff's reports of constant pain, but noted her testimony that she was not prescribed pain medication.  (*Id.* at 31, 32).  It was not inappropriate for the ALJ to consider a conversative course of treatment in assessing the severity of Plaintiff's limitations.  *Christina J. v. Comm'r of Soc. Sec.*, 695 F. Supp. 3d 357, 365 (W.D.N.Y. 2023) (finding no error in the ALJ's consideration of a conversative course of treatment as one factor in the assessment of claimant's fibromyalgia).

In addition to relying on the objective examination findings in assessing her subjective complaints, the ALJ discussed Plaintiff's reported activities of daily living, which he concluded revealed that she was living independently.  (Dkt. 6 at 43).  The ALJ's decision reflected that Plaintiff lives with her mother and two sons and does all the housework but gets help with cooking and folding laundry.  She also drives and takes care of her own personal care except for washing and blow-drying her hair.  She spends her days reading crime and romance novels and doing housework.  (*Id.* at 32).  While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012).  Indeed, the

Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  20 C.F.R. § 416.929(c)(3)(i).

Thus, the ALJ properly found that Plaintiff's claims regarding her symptoms were inconsistent with the other evidence of record, including a conversative course of pain treatment and Plaintiff's own reports of her activities of daily living, in addition to the lack of objective evidence.  Because it is apparent from the written determination that the ALJ considered the longitudinal treatment record in assessing limitations caused by Plaintiff's fibromyalgia, no error has been demonstrated.  In other words, this is not a case where the ALJ discounted Plaintiff's complaints of pain from her fibromyalgia solely based on objective medical evidence.  Accordingly, remand is not required.

### B.    Lay Opinion

Finally, Plaintiff argues that the ALJ improperly relied upon his own lay opinion to craft Plaintiff's RFC.  The Court disagrees.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .'  This

rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at \*12 (D. Conn. Dec. 1, 2017) (citations omitted).   "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."   *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).   However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."   *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

Plaintiff's motion glosses over the fact that the opinions of Dr. Toor and RPA Goetz were not the only medical opinions of record relating to Plaintiff's physical RFC.   On April 13, 2021, C. Krist, D.O., a state agency medical consultant, opined that Plaintiff could perform light work.   (Dkt. 6 at 74-88).   Dr. Krist opined that Plaintiff had unlimited limitations in the use of ramps and stairs, could occasionally balance and climb ladders, ropes, or scaffolds, and frequently stoop, kneel, crouch, and crawl.   (*Id.* at 83-84).   On reconsideration, D. Brauer, M.D., also found Plaintiff capable of performing the light range of work.   (*Id.* at 91-110).   Dr. Brauer opined that Plaintiff could only occasionally climb ramps and stairs and should avoid heights or machinery, but otherwise affirmed Dr. Krist's conclusions.   (*Id.*).   In finding these opinions generally persuasive, the ALJ explained

> The medical consultants' opinions are generally persuasive for physical medical source statements to the extent that she can perform light work with non-exertional limits.   Treatment records show minimal positive findings, normal gait; minimal limits on range of motion, strength normal, and no problems arising from seated position.   Further, her fibromyalgia is not well

documented, as only tender points are primarily for the neck.  Additionally, nerve studies note no cervical radiculopathy.  Based on entirety of record, I have limited her to occasional postural activities.  Although diagnosed with left carpal and cubital syndromes, condition is noted as mild and with no limits in dexterity.  The opinion [Plaintiff] would have to avoid moderate exposure to respiratory irritants and hazards is not supportable by the treatment records based on minimal findings.  Further, limits to heights are based on balance issues; however, records do not indicate any significant issues with balance.  Based on [Plaintiff's] history, I have limited her to avoidance of concentrated exposure to respiratory irritants.

(*Id.* at 40-41).  In her reply, Plaintiff does not dispute that the opinions of Dr. Krist and Dr. Brauer support the RFC determination but argues that they cannot constitute substantial evidence on their own.  But the ALJ did not rely solely on the opinions of Dr. Krist and Dr. Brauer in determining Plaintiff's RFC, but rather, considered those opinions in the context of the administrative record and Plaintiff's testimony in determining the RFC.

"An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability."  *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016).  An ALJ may determine that a non-examining source provides substantial evidence when it is better supported by the record.  *Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.*, No. 5:23-CV-668, 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 7, 2024) ("As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of an ALJ's decision."); *Roane v. O'Malley*, No. 22 CIV. 10704 (AEK), 2024 WL 1357845, at *11 (S.D.N.Y. Mar. 29, 2024) ("[W]hen supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence."  (quoting *Rose o/b/o X.G.T.A. v. Berryhill*, No. 18-cv-509

(LGS) (SN), 2019 WL 2453352, at *3 (S.D.N.Y. Feb. 4, 2019)).  As a result, an ALJ may rely on the opinion of a non-examining medical source in formulating the RFC because they "are deemed to be qualified experts in the field of social security disability."  *See Bump*, 2016 WL 6311872, at *4.

Here, the ALJ explained that he found the opinions offered by Dr. Krist and Dr. Brauer to be generally persuasive and explained his reasons for doing so.  Other than seeming to suggest that the ALJ should necessarily credit the opinion of an examining physician over the opinion of non-examining physicians, Plaintiff offers no meaningful argument as to why the ALJ erred in crediting the opinions offered by Dr. Krist and Dr. Brauer over Dr. Toor and RPA Goetz.  *See Andrew S. v. Comm'r of Soc. Sec.*, No. 21-CV-6565MWP, 2024 WL 989705, at *6 (W.D.N.Y. Mar. 7, 2024) ("In any event, pursuant to the regulations, the opinions of all medical sources, including both non-examining and one-time examining consultants, will be held to the same standard of persuasiveness of content. . . . Accordingly, the ALJ could properly conclude that the limitations assessed by Periakaruppan were more consistent with and supported by the record than those assessed by Toor, even though Toor personally examined plaintiff." (quotation and citations omitted)).  In short, contrary to Plaintiff's implication, this is not a case where the ALJ disregarded well-supported medical opinions, or obtained no medical opinions, and fashioned an RFC from whole cloth.  As explained above, the limitations included in the RFC are well-supported by the evidence, including the opinion evidence, in the record. Accordingly, remand is not required on this basis.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 15, 2024
       Rochester, New York